RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10 / 7 / 11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **OCEANCONNECT.COM INC., ET AL** | : | **DOCKET NO. 2:09-1694** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **M/V FESCO ANGARA** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is a "Motion to Dismiss" (R. #35) filed by defendant, M/V FESCO ANGARA, wherein the vessel seeks to dismiss the claims of plaintiffs, OceanConnect.com, Inc. and OceanConnect UK Ltd. (collectively referred to as "OceanConnect") pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, 12(b)(6) for failure to state a claim upon which relief may be granted. Because evidence outside the pleadings had been submitted by the parties, the motion to dismiss was converted to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The parties were granted an extension of time to submit additional summary judgment evidence and arguments. That time has now lapsed and no additional evidence and/or briefs have been submitted. Accordingly, the motion is now ripe for consideration.

Also before the court is a motion for oral argument (R. #41) with respect to the motion to dismiss converted to a motion for summary judgment which will be denied as unnecessary.

---

[1] R. #49, Electronic Order dated August 15, 2011.

# FACTUAL STATEMENT

The defendant, M/V FESCO ANGARA, is a bulk carrier (referred to as the "vessel"). The time charterer in possession of the FESCO ANGARA, Britannia Bulkers A/S ("Britannia") arranged for bunkers to be delivered to the vessel. OceanConnect paid for and/or contracted for the bunkers for the vessel which were loaded in Santos, Brazil on October 6, 2008. Shortly after the bunkers were delivered, Britannia encountered financial difficulties which resulted in its insolvency. Britannia then redelivered the FESCO ANGARA to the owners, Angara Maritime Limited, ("Owners") and did not pay OceanConnect for the bunkers.

On March 9, 2009, the vessel was arrested in the Netherlands and substitute security was posted at that time. OceanConnect claims that it is entitled to a maritime lien for THE bunkers (or necessaries) taken on by the FESCO ANGARA. An Escrow Agreement was entered at that time which provided that the vessel could not be arrested again for the purpose of security; the agreement preserved the issue of arresting the FESCO ANGARA for obtaining competent jurisdiction.

Thereafter, the Owners of the vessel instituted an *in personam* action in London, England to avoid liability for the non-payment of the bunkers and to avoid the effect of the maritime lien for the non-payment of necessaries as provided under Title 46 of the U.S. Code.

On September 25, 2009, OceanConnect filed their Complaint and a Motion for a Warrant for Maritime Arrest in this court asserting a right to arrest the vessel based upon the existence of a maritime lien against it. This court granted plaintiffs' motion and issued an Order of Issuance of Process of Maritime Arrest that same day. On September 30, 2009, the vessel arrived in Lake Charles, Louisiana, and was arrested pursuant to the court's Order.

On October 1, 2009, plaintiffs filed a Motion to Vacate Arrest and a Notice of Filing Proof

of Substitute Security. The Owners made a limited appearance and after a telephone conference with the court, the motion to vacate was denied as moot because the court was notified that the vessel had already been released by the U.S. Marshal. On October 12, 2009, OceanConnect filed a motion to stay the proceedings because the English court had enjoined plaintiffs from proceeding with this litigation. The court granted that motion.

On April 19, 2011, OceanConnect filed a motion to lift the stay after the English High Court's injunction was dissolved on appeal by the English Court of Appeal. Because OceanConnect was no longer enjoined from pursuing this suit, the stay was lifted.

In their motion to dismiss, the vessel seeks to dismiss the *in rem* claims of OceanConnect because at no time was substitute security posted with this court **by the Owners of the vessel** to serve as a substitute *res*. Thus, the vessel asserts that because the FESCO ANGARA was released without the posting of substitute security, there is no jurisdiction over the *res* to allow this court to issue a judgment against the vessel. The vessel further maintains that because the complaint seeks the "arrest . . . solely for the purpose of establishing jurisdiction and not for security",[2] the complaint fails to state a claim upon which relief can be granted because the procedure used was deficient, rendering this court without a *res* against which relief may be granted.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

---

[2] Complaint, R. #1, ¶ 10, p. e, (prayer for relief).

would entitle him to relief.'"³ Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.⁴ The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true.⁵ In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.⁶ "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."⁷ "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."⁸ "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."⁹

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."¹⁰ A complaint that offers "labels and conclusions:"

---

³ Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977)(per curium) citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

⁴ Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

⁵ Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

⁶ Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992).

⁷ Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

⁸ Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

⁹ Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

¹⁰ Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

or "a formulaic recitation of the elements of a cause of action will not do."[11] Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[12]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[13]

## LAW AND ANALYSIS

The vessel maintains that the *in rem* claims must be dismissed for lack of jurisdiction because the FESCO ANGARA was released without posting substitute security. The vessel further complains that the Complaint in seeking the "arrest . . . solely for the purpose of establishing jurisdiction and not for security", fails to state a claim upon which relief can be granted because the procedure used was deficient, rendering this court without a *res* as against which relief may be granted.

"It is a longstanding admiralty fiction that a vessel may be assumed to be a person for the purpose of filing a lawsuit."[14] A motion to dismiss for lack of *in rem* jurisdiction over the vessel is brought pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds of "lack of jurisdiction over the person."[15] The party who seeks to invoke the jurisdiction of the district court bears the

---

[11] Id.

[12] Id., at 557, 127 S.Ct. 1955.

[13] Id., at 570, 127 S.Ct. 1955.

[14] Luera v. M/V Alberta, 635 F.3d 181, 184 n.1 (5th Cir. 2011).

[15] See e.g., Porsche Cars North America, Inc. v. Porsche.net, 302 F.3d 248, 256 (4th Cir.2002)(noting personal jurisdiction is analogous to *in rem* jurisdiction).

burden of showing the existence of personal jurisdiction.[16]

OceanConnect initially seized the vessel in the Netherlands through an *in personam* pre-judgment attachment procedure under Dutch law known as a "conservatory arrest."[17] To secure the release of the vessel from its pre-judgment attachment in the Netherlands, the vessel's owners entered into a contract with OceanConnect – the Escrow Agreement.[18] The Escrow Agreement provided that OceanConnect agreed to lift its arrest and refrain from taking any further actions against the vessel "for the purposes of obtaining security."[19]

In order to enforce its U.S. maritime claim in this court, OceanConnect filed the instant matter, arrested the vessel in Lake Charles, Louisiana, and then filed the Escrow Agreement into the record as substitute security pursuant to Supplemental Admiralty Rule E(5)(a). Under U.S. maritime law, *in rem* jurisdiction on a claim is perfected by arresting the *res*, or in this case, the vessel. "In an *in rem* admiralty action. . . a vessel or other property against which the lien is asserted becomes the *res* or subject matter of the action. . . . Jurisdiction over the *res* is obtained by arrest under process of the court."[20] Hence, OceanConnect maintains that by arresting the vessel in Lake Charles, it obtained *in rem* jurisdiction over the vessel.

---

[16] Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 326 (5th Cir. 1996).

[17] The Netherlands does not recognize *in rem* claims.

[18] Plaintiffs' exhibit A, Escrow Agreement.

[19] Id., p.1.

[20] U.S. v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess? Inc., 366 F.3d 767, 771 (9th Cir. 2004). See also Ventura Packers, Inc. v. F/V Jeanine Kathleen, 424 F.3d 852, 859 (9th Cir. 2005)("In this action, the district court obtained *in rem* jurisdiction when the three vessels were arrested pursuant to maritime process").

OceanConnect asserts that once it arrested the vessel to obtain jurisdiction, it had no reason to keep the vessel in detention, and be at risk of "demurrage" (delay charges). Thus, OceanConnect filed the Escrow Agreement into the record of this matter as a substitute *res*, and subsequently filed a motion to release the vessel.

OceanConnect relies on Supplemental Admiralty Rule E(5) which governs the release of an arrested vessel. Rule E(5) provides three tools to effect the release of arrested vessels: (1) a "special bond", (2) a "general bond," or (3) release by consent or stipulation.[21] OceanConnect submits that the Escrow Agreement it filed into the record is a "special bond" that meets the requirements of Rule E(5)(a). Rule E(5)(a) declares that a vessel may be released upon "the giving of security . . . by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court. The parties may stipulate the amount and nature of such security."

A special bond replaces the arrested vessel for the purposes of the plaintiff's *in rem* claims. OceanConnect maintains that the Escrow Agreement is sufficient because the only requirement for a special bond is that it be "conditioned to answer the judgment of the court" and that the terms of the Escrow Agreement require that it must pay any judgment rendered against the vessel "by a competent court of law having jurisdiction in the matter."

The vessel maintains that the Escrow Agreement neither conferred jurisdiction upon this court nor served as substitute security to obtain its release. The vessel argues that because it was released without the posting of substitute security, there is no jurisdiction over the *res* to allow this

---

[21] Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338, 1342, fn.6 (5th Cir. 1981).

court to issue judgment.[22] The vessel compares the Escrow Agreement to letters of undertaking which it argues must be interpreted so as to give effect to the intention of the parties. The vessel relies on Panaconti Shipping Co., S.A. v. M/V Y Papanti,[23] and argues that in order to function as substitute security sufficient to give a court *in rem* jurisdiction, the Escrow Agreement must satisfy the following three principal elements: (1) it must expressly state that its purpose is to avoid arrest or secure the release of the vessel in custody in the forum; (2) provide security for the party's claims in that forum; and (3) contain a stipulation of the owner, consenting to litigate in the forum.

The vessel maintains that the Escrow Agreement is inadequate because it was posted by the owners of the vessel for the purpose of securing the release of the vessel from the Netherlands, not the vessel's release from this court's custody, nor does it consent to this court's jurisdiction. Thus, the vessel argues that the Escrow Agreement does not meet the requirements mentioned in the Panaconti Shipping case.

OceanConnect argues that the Panaconti Shipping case does not refer or rely on Rule 5(E) and notes that the only requirement for Rule 5 is that it be "conditioned to answer the judgment of the court." OceanConnect remarks that the Panaconti case did not address Rule 5, but only what requirements a stipulation must satisfy in order for the claimant to be able to sue on it directly, *in rem*, without arresting the vessel. OceanConnect also informs the court that the Panaconti case only addressed three salient characteristics of a traditional letter of undertaking and distinguished a letter of undertaking from a bond.

---

[22] See Canal Steel Works v. One Drag Line Dredge, 48 F.2d 212 (5th Cir. 1931)(where the thing seized has been released, there is no subject matter upon which the judgment of a court can operate).

[23] 865 F.2d 705, 708 (5th Cir. 1989).

8

OceanConnect argues that the Escrow Agreement provides that it will pay any judgment rendered against the vessel "by a competent court of law having jurisdiction in the matter." Thus, the court acquired jurisdiction when OceanConnect arrested the vessel, and the Escrow Agreement must respond. The vessel argues that the filing of the Escrow Agreement is insufficient because OceanConnect filed it as opposed to the Owners of the vessel. In other words, the vessel owners did not consent to the Escrow Agreement being filed as substitute security for the vessel in this jurisdiction. The vessel remarks that the Escrow Agreement could not stand as a substitute *res* in this court because at the time of its execution, the vessel had only been arrested in the Netherlands, and the arrest in Lake Charles did not occur until months later. The vessel maintains that the Escrow Agreement was made to secure the release of the vessel in the Netherlands months before the vessel was arrested in this district and was never intended to serve as a substitute *res* in any jurisdiction where the vessel may be found.

The vessel further relies on 28 USC § 2464 to support its position that only the vessel's owner can post the proper security because it is the owner who decides if it is going to allow a "special bond" to stand in place of the vessel.

OceanConnect argues that Rule E(5) does not state that the stipulated substitute security must be posted only by the defendant, and that it is illogical to prohibit a plaintiff from posting a contractual stipulation to substitute security with the court since the defendant has already stipulated in the Escrow Agreement to pay the judgment. OceanConnect notes that the Escrow Agreement does not say it responds only to a court "in the Netherlands," and furthermore, the Netherlands'

9

courts do not have a procedural mechanism to enforce *in rem* claims.[24] Rather, the Escrow Agreement stipulates that it will pay a judgment rendered in a court of competent jurisdiction.

After considering the argument of the parties, and considering the evidence submitted, we find that the court has *in rem* jurisdiction over the vessel. *In rem* jurisdiction over the vessel arises by law upon its arrest in the judicial district.[25] The vessel was arrested in Lake Charles, Louisiana which gave this court jurisdiction over the vessel. The Escrow Agreement required that it must pay any judgment rendered against the vessel "by a competent court of law having jurisdiction in the matter."[26] The Escrow Agreement, as substitute security, is sufficient to preserve this court's *in rem* jurisdiction. Accordingly, this court does have jurisdiction over this *in rem* proceeding, and plaintiffs have stated a claim upon which relief may be granted.

## CONCLUSION

Based on the foregoing, the court finds that the arrest of the M/V FESCO ANGARA in Lake Charles, Louisiana gave this court jurisdiction and the filing of the Escrow Agreement was sufficient as substitute security in order for this court to preserve its *in rem* jurisdiction. Accordingly, the motion to dismiss for lack of jurisdiction, converted to a motion for summary judgment will be denied. The motion for oral argument with respect to the motion to dismiss will be denied as

---

[24] Belcher Co. of Alabama v. M/V Maratha Mariner, 724 F.2d 1161, 1164 (5th Cir. 1984)(Dutch law does not recognize the concept of a maritime lien and, therefore, provides no mechanism by which such a lien can be enforced.)

[25] Wong Shin v. M/V Mardina Trader, 564 F.2d 1183, 1186 (5 th Cir. 1977)("In rem process is a peculiar feature of admiralty jurisdiction. It is begun by arresting the property which is the subject of the litigation, . . . This arrest or seizure of the property gives the court jurisdiction.").

[26] Plaintiffs' Exhibit A.

unnecessary.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 7th day of October, 2011.

*James Trimble*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE