RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 1/26/12
BY_____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| OCEANCONNECT.COM, INC. AND OCEANCONNECT UK LTD. | : | DOCKET NO. 09-1694 |
| VS. | : | JUDGE TRIMBLE |
| M/V FESCO ANGARA, AND ITS TACKLE, EQUIPMENT, AND APPURTENANCES, IN REM. | : | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Before the court is "OceanConnect's Motion for Summary Judgment" (R. #45) wherein the plaintiffs, OceanConnect.com, Inc. and OceanConnect UK LTD, (collectively referred to as "OceanConnect") move the court to enter summary judgment pursuant to Federal Rules of Civil Procedure 56(c) for the principal sum of $177,305.59 for fuel bunkers and prejudgment interest on that sum.

FACTUAL STATEMENT

The defendant, M/V FESCO ANGARA, is a bulk carrier (referred to as the "vessel"). The time charterer in possession of the FESCO ANGARA, Britannia Bulkers A/S ("Britannia") arranged for fuel bunkers to be delivered to the vessel. OceanConnect paid for and/or contracted for the bunkers for the vessel which were loaded in Santos, Brazil on October 6, 2008. Shortly after the bunkers were delivered, Britannia encountered financial difficulties which resulted in its insolvency. Britannia then redelivered the FESCO ANGARA to the owners, Angara Maritime Limited, ("Owners") and did not pay OceanConnect the outstanding sum of $177,305.59 for the bunkers.

On March 9, 2009, the vessel was arrested in a prejudgment attachment procedure in the

Netherlands; substitute security was posted at that time via an escrow agreement. The vessel was released in the Netherlands. Thereafter, the Owners of the vessel instituted an *in personam* action in London, England to avoid liability for the non-payment of the bunkers and to avoid the effect of the maritime lien for the non-payment of necessaries as provided under Title 46 of the U.S. Code.

On September 25, 2009, OceanConnect filed their Complaint and a Motion for a Warrant for Maritime Arrest in this court asserting a right to arrest the vessel based upon the existence of a maritime lien against it. This court granted plaintiffs' motion and issued an Order of Issuance of Process of Maritime Arrest that same day. On September 30, 2009, the vessel arrived in Lake Charles, Louisiana, and was arrested pursuant to the court's Order.

On October 1, 2009, plaintiffs filed a Motion to Vacate Arrest and a Notice of Filing Proof of Substitute Security. The Owners made a limited appearance and after a telephone conference with the court, the motion to vacate was denied as moot because the court was notified that the vessel had already been released by the U.S. Marshal. On October 12, 2009, OceanConnect filed a motion to stay the proceedings because the English court had enjoined plaintiffs from proceeding with this litigation. The court granted that motion.

On April 19, 2011, OceanConnect filed a motion to lift the stay after the English High Court's injunction was dissolved on appeal by the English Court of Appeal. Because OceanConnect was no longer enjoined from pursuing this suit, the stay was lifted. Pursuant to a motion to dismiss which was subsequently converted to a motion for summary judgment, the undersigned found that this court had *en rem* jurisdiction over the vessel.[1] OceanConnect claims that it is entitled to a maritime lien for the bunkers (or necessaries) taken on by the FESCO ANGARA and seeks summary

---

[1] Memorandum Ruling, R. #58.

2

judgment in its favor for the principal amount owed and pre-judgment interest.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most

---

[2] Fed. R.Civ. P. 56(c).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[4] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[5] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6] Anderson, 477 U.S. at 249.

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## LAW AND ANALYSIS

In an *in rem* action, OceanConnect must establish that (1) it delivered the bunkers to the M/V FESCO ANGARA, (2) the bunkers were a necessary within the meaning of the Federal Maritime Lien Act, 46 U.S.C. § 31301 *et seq.*, ("FMLA") (3) the charges claimed are reasonable, and (4) the person who placed the order had the authority to do so.[10] OceanConnect maintains that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

OceanConnect submits as summary judgment evidence the declaration of Jacqueline Gooby to authenticate the appropriate documents which show that the bunkers were contracted for and provided.[11] Also submitted is the bunker sales confirmation between OceanConnect and Brittania to establish the contract for the delivery of the bunkers to the vessel[12] and an invoice showing that OceanConnect followed through on the contract and purchased the bunkers from a third-party supplier (Petrobras) on October 6, 2008 to be delivered to the vessel.[13] To prove that the bunkers

---

[8] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9] Anderson, 477 U.S. at 249-50.

[10] Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner, 724 F.2d 1161 (C.A.Tex. 1984); see also Trico Marine Operations, Inc. v. Falcon Drilling Co., 1996 WL 96883 at *2 (E.D. La. 1996), *aff'd,* 116 F.3d 159 (5th Cir. 1997).

[11] Plaintiffs' exhibit A, declaration of Jacqueline Gooby.

[12] Plaintiffs' exhibit B and B-1 (incorporated contractual terms).

[13] Plaintiffs' exhibit C.

4

were actually delivered on October 10, 2008, OceanConnect submits the Bunker Delivery Note.[14]

The FMLA allows a maritime lien on the vessel, enforceable *in rem*, for a person providing "necessaries" to a vessel. OceanConnect maintains there is no genuine issue of material fact that the fuel bunkers are necessaries under the FMLA. Bunkers for a vessel fall within the meaning of "necessaries" as set forth in the FMLA. The Fifth Circuit has recognized that the term "necessary" under the FMLA includes most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function.[15] Fuel bunkers have been deemed to be necessaries within the meaning of the FMLA.[16] The FESCO ANGARA has failed to create a genuine issue of material fact as to whether the fuel bunkers are necessary for the vessel and the performance of her function.

OceanConnect maintains that the charges for the bunkers were reasonable remarking that it was only slightly higher than the amount it paid Petrobras for the bunkers[17] and furthermore, it is in line with the ordinary market value for this quantity of bunkers of this type.[18] The FESCO ANGARA has failed to dispute whether or not the charges for the bunkers were reasonable.

OceanConnect maintains that Zhivko Venkov, the person who placed the order for the bunkers had the proper authority to do so as an agent and employee of Britannia. The FMLA

---

[14] Plaintiffs' exhibit D.

[15] Equilease Corp. v. M/V Sampson, 793 F.2d 598, 603 (5th Cir. 1986) (en banc).

[16] Triton Marine Fuels Ltd., S.A. v. M/V. Chukotka, 575 F.3d 409, 414 at n.2 (4th Cir. 2009); see also Trans-Tec Asia v. M/V Harmony Container, 518 F.3d 1120, 1128 at n.9 (9th Cir. 2008).

[17] Plaintiffs' exhibit C.

[18] Plaintiffs' exhibit A, ¶ 5.

provides that an officer or agent of the charterer of a vessel is presumed to have the authority to procure necessaries for the vessel.[19] The FESCO ANGARA does not dispute whether or not Zhivko Venkov had authority to place the order for the bunkers.

The FESCO ANGARA maintains that there are genuine issues of material fact as to (1) whether or not the underlying contract between OceanConnect and Britannia is a maritime contract, (2) whether the services contracted for by Britannia involved securing the provision of necessaries to the FESCO ANGARA, and (3) which entity – OceanConnect.com, Inc., or OceanConnect UK Ltd– is entitled to assert a maritime lien.

The FESCO ANGARA maintains that summary judgment is premature because of the "complete absence of discovery." The court notes that the Joint Rule 26(f) Discovery Plan, filed on June 23, 2011 and signed by both plaintiff and defense counsel, provides that discovery shall be completed by November 30, 2011.[20] The FESCO ANGARA also complains that a motion to dismiss for lack of jurisdiction has been filed to dismiss the instant suit. The undersigned issued a Memorandum Ruling and Judgment on October 7, 2011[21] denying the motion to dismiss and finding that this court does have *in rem* jurisdiction over this matter.

The FESCO ANGARA maintains that discovery is needed to resolve the question as to whether OceanConnect.com or OceanConnect UK Ltd. is entitled to a maritime lien, and further complains that the relationship between these two entities has yet to be established. As noted above, the deadline for discovery has lapsed. Furthermore, OceanConnect has submitted summary

---

[19] 46 U.S.C. § 31341(a)(4)(B).

[20] R. #34.

[21] R. #58 and 59.

judgment evidence that has not been disputed that OceanConnect UK, Ltd. is the seller of the bunkers to Britannia for the FESCO ANGARA[22] and because Brittania had no credit with Petrobas, the supplier of the bunkers, OceanConnect. Com, which owns 100% of OceanConnect UK, Ltd., paid the amount owed by OceanConnect UK, Ltd for the bunkers at the request of OceanConnect UK, Ltd.[23] OceanConnect maintains that because Britannia neither paid OceanConnect.com nor OceanConnect UK Ltd, for the bunkers, this non-payment gives rise to a maritime lien under the FMLA. The court agrees and finds no merit to defendant's argument that the sale of fuel bunkers on credit is not a maritime contract, nor a maritime lien.

*Pre-judgment interest*

OceanConnect maintains that it is entitled to prejudgment interest from the date of the loss. In Socony Mobil Oil Co., Inc. v. Texas Coastal & Int'l, Inc.,[24] the court explained that interest should be granted unless there are exceptional or peculiar circumstances, and prejudgment interest is not awarded as a penalty, but is in the nature of compensation for the use of funds. In Reeled Tubing, Inc. v. M/V Chad G,[25] the court emphasized that under maritime law, the awarding of "prejudgment interest is the rule rather than the exception, and, in practice, is well-nigh automatic." Prejudgment interest is usually awarded from the date of loss to ensure that the injured plaintiff is compensated

---

[22] R. #45-3, plaintiffs' exhibit B.

[23] R. #45-2, plaintiffs' exhibit A, 50-2, 45-7 plaintiffs' exhibit D.

[24] 559 F.2d 1008, 1014 (5th Cir. 1977) citing American Zinc Co. v. Foster, 441 F.2d 1100 (5th Cir.) cert.denied, 404 U.S. 855, 92 S.Ct. 99 (1971).

[25] 794 F.2d 1026, 1028 (C.A.5 1986) citing Inland Oil & Transport Co. v. Ark-White Towing Co., 696 F.2d 321, 327 (5th Cir. 1983).

for the use of funds to which the plaintiff was entitled.[26]

OceanConnect submits that the interest rate for the fuel bunkers is contemplated in the bunker sales contract and invoice between Ocean Connect and Britannia at a rate of 2% per interest rate per month pro rated daily.[27] However, OceanConnect suggests that this rate compounded is the equivalent of 24% per year and suggests that the amount should be tempered and reduced to 8% per year from October 10, 2008. The FESCO ANGARA does not dispute nor disagree with this. Accordingly, the court will award prejudgment interest at a rate of 8% per year from October 10, 2008.

## CONCLUSION

For the reasons set forth above, the court finds that OceanConnect has established the elements of the maritime lien with respect to the fuel bunkers and the FESCO ANGARA has failed to create a genuine issue of maritime law. Accordingly, the motion for summary judgment will be granted and OceanConnect is entitled to judgment as a matter of law in the amount of $177,305.59 plus prejudgment interest on that sum.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 26th day of January, 2012.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[26] Id.

[27] Plaintiffs' exhibit B; Plaintiffs' exhibit B-1; Plaintiffs' exhibit E.