RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/31/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| OCEANCONNECT.COM, INC., ET AL | : | DOCKET NO. 2:09-1694 |
| VS. | : | JUDGE TRIMBLE |
| M/V FESCO ANGARA AND ITS TACKLE, EQUIPMENT AND APPURTENANCES, IN REM | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is "OceanConnect's Motion for Summary Judgment" (R. #45) and a "Cross-Motion for Summary Judgment" (R. #83) filed by defendant M/V FESCO ANGARA (the "vessel") (R. #83). OceanConnect's motion maintains that it is entitled to a judgment on its maritime lien claim because it meets the necessary requirements under the Federal Maritime Lien Act ("FMLA"), whereas the vessel opposes the motion and also seeks judgment in its favor positing that OceanConnect is not entitled to a maritime lien because either England or Denmark law is applicable to the instant case and neither England nor Denmark recognize maritime liens.

### FACTUAL STATEMENT

The defendant, M/V FESCO ANGARA, is a bulk carrier (referred to as the "vessel"). The time charterer in possession of the FESCO ANGARA, Britannia Bulkers A/S ("Britannia")[1] arranged with OceanConnect UK[2] for fuel bunkers to be delivered to the vessel. OceanConnect UK is located

---

[1] Brittania is a Danish entity; Brittania's bunker buyer, Mr. ZhivkoVenkov, works primarily out of Brittania's London office. Defendant's exhibit C, p. 24-26.

[2] Brittania communicated via e-mail and phone with OceanConnect UK's representative, Ms. Jackie Gooby who was located in London, England.

in London, England; OceanConnect.com which is located in New York, owns 100% of OceanConnect UK, Ltd. Because Britannia did not have a credit line with the supplier of the fuel bunkers, OceanConnect.com was used as the purchaser based on its credit line with the supplier.[3] Thus, OceanConnect.com paid for and/or contracted for the bunkers for the vessel which were loaded in Santos, Brazil.

Shortly after the bunkers were delivered, Britannia encountered financial difficulties which resulted in its insolvency. Britannia then redelivered the FESCO ANGARA to the owners, Angara Maritime Limited, ("Owners") and did not pay OceanConnect the outstanding sum of $177,305.59 for the bunkers.

On September 25, 2009, OceanConnect filed a Complaint and a Motion for a Warrant for Maritime Arrest in this court asserting a right to arrest the vessel based upon the existence of a maritime lien against it. This court granted plaintiffs' motion and issued an Order of Issuance of Process of Maritime Arrest that same day. On September 30, 2009, the vessel arrived in Lake Charles, Louisiana, and was arrested pursuant to the court's Order.

On October 1, 2009, plaintiffs filed a Motion to Vacate Arrest and a Notice of Filing Proof of Substitute Security. The Owners made a limited appearance and after a telephone conference with the court, the motion to vacate was denied as moot because the court was notified that the vessel had already been released by the U.S. Marshal.

Pursuant to a motion to dismiss which was subsequently converted to a motion for summary judgment, the undersigned found that this court had *en rem* jurisdiction over the vessel.[4]

---

[3] Defendant's exhibit C, pp. 54-56; defendant's exhibit D, pp. 32-35.

[4] Memorandum Ruling, R. #58.

OceanConnect filed a motion for summary judgment[5] asserting that it was entitled to a maritime lien for the bunkers (or necessaries) taken on by the FESCO ANGARA. OceanConnect sought summary judgment in its favor for the principal amount owed and pre-judgment interest. The undersigned granted the motion in favor of OceanConnect in the amount of $177,305.59.

The vessel then filed a motion for reconsideration[6] asserting that it needed additional discovery to respond to the issues raised by OceanConnect. The undersigned granted the motion and vacated its ruling as to the motion for summary judgment in order for the vessel to completely respond to the motion after additional discovery.[7] The court then reset the briefing deadlines for the parties as to the motion for summary judgment. The vessel has filed its opposition to the motion and has also filed a cross motion for summary judgment[8] which will be considered with the original motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[9] A fact is "material" if its existence or

---

[5] R. #45.

[6] R. #69.

[7] R. #78.

[8] R. #83.

[9] Fed. R.Civ. P. 56(c).

3

nonexistence "might affect the outcome of the suit under governing law."[10] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[11] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[12] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[13] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[14] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[15] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[16]

## LAW AND ANALYSIS

In its cross motion for summary judgment and opposition to OceanConnect's motion for summary judgment, the vessel argues that the transaction between OceanConnect.com, the lender

---

[10] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[11] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[12] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[13] Anderson, 477 U.S. at 249.

[14] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[15] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[16] Anderson, 477 U.S. at 249-50.

and purchaser of the fuel bunkers, and Britannia, the bankrupt debtor and charterer of the vessel, has no factual relationship or connection to the United States. The vessel remarks that the only possible basis for applying U.S. law to resolve the instant dispute is a "choice of law" clause found in a *post facto* bunker confirmation e-mail that OceanConnect UK sent to Britannia.

The vessel asserts that the two predicate issues to be addressed are: (1) which jurisdiction's law governs issues pertaining to contract formation, and (2) whether the U.S. choice of law provision is binding on and can be enforced against the FESCO ANGARA under the law of that jurisdiction. The vessel posits that Britannia, the charterer, lacked contractual capacity to bind the vessel or its owners to a choice of law provision in the contract for the purchase of the fuel bunkers. The vessel remarks that neither English or Danish law recognizes a maritime lien for necessaries.

OceanConnect relies on Trans-Tec Asia v. M/V Harmony Container,[17] wherein the Ninth Circuit Court of Appeals considered whether a foreign supplier, by supplying fuel to a foreign-flagged vessel in a foreign port under an agreement that United States law applied to the transaction, may obtain a maritime lien under the Federal Maritime Lien Act[18] on a vessel docked in an American port. In reversing the district court, the appeals court held that based on the plain language of the statute, coupled with an enforceable choice of law clause, a maritime lien arose under the FMLA.

In the Trans-Tec case, the district court granted summary judgment in favor of the vessel and its owner and against the fuel provider, holding that the FMLA did not permit a foreign necessaries provider to obtain a maritime lien. The court specifically found that Malaysian law, not United

---

[17] 518 F.3d 1120, 1126-27 (9th Cir. 2008).

[18] 46 U.S.C. § 31301, *et seq.* ("FMLA").

States law, governed contract formation and that under Malaysian law, the United States choice of law clause was incorporated as a term of the contract. The vessel owner was a Malaysian corporation, the vessel was registered in Malaysia and flew under a Malaysian flag. The vessel owner and fuel supplier appealed. The vessel owner appealed the court's decision that the United States choice of law provision applied. The appellate court agreed with the district court in that Malaysian law applied to the contract formation finding that the vessel owner's nationality and the vessel's flag were "substantial contacts" that pointed toward Malaysian law as the most appropriate for resolving the litigation.

The appellate court applied the principles found in Lauritzen v. Larsen,[19] which identified the following factors that influence a court's analysis of which law would be applied, which in this case would be – which law would apply as to the contract formation. Those factors include the (1) place of the wrongful act, (2) law of the ship's flag,[20] (3) allegiance or domicile of the injured, (4) allegiance of the ship owner, (5), place of contract,[21] (6) inaccessibility of foreign forum, and (7) the law of the forum. Courts should weigh and evaluate all relevant points of contact between the transaction and the sovereign legal systems that are affected by it.[22]

In this contract case, the place of the wrongful act can not be easily determined given that the injury incurred was the failure of Britannia to pay OceanConnect for the fuel bunker. However,

---

[19] 345 U.S. 571, 73 S.Ct. 921 (1953).

[20] "[T]he weight given to the ensign overbears most other connecting events in determining applicable law." Id. at 585.

[21] This factor "has significance in choice of law in a contract action." Id. at 588.

[22] Trans-Tec Asia, 518 F.3d at 1124.

OceanConnect.com is located in New York, and had payment been made it would have potentially included payment to the New York entity. It should be noted that the transaction originated from London, England when a representative from OceanConnect UK (a subsidiary of OceanConnect.com) contacted OceanConnect.com pursuant to an internal policy which required that the parent company be utilized as the buyer of the fuel bunkers. Thus, we find this factor weighs in favor of the United States.

The law of the ship's flag is from Marshall Island. This fact alone bears little to no weight. The domicile of the injured party, OceanConnect.com, is the United States and we find this factor significant because without OceanConnect's credit line, the contract for the sale of the fuel bunkers would not have taken place; furthermore, OceanConnect assumed the risk of nonpayment. Thus, because the United States has a legitimate interest in protecting its citizens who extend credit to foreign entities and/or vessels, we find that this factor bears significant weight.

The allegiance of the defendant, the vessel owners is England; therefore, this is a significant point of contact. The place of contract could potentially be the United States or London, England. Even though the string of e-mails initially began between Mr. Zhivko Venkov, a bunker buyer for Britannia, in his London, England office, and Ms. Jackie Gooby, an employee of OceanConnect UK, also located in London, Ms. Takako Shiozaki, a bunker broker and trader employed by Ocean Connect.com and located in Seattle, Washington sought from Petrobras Brazilieros ("Petrobras"), in Brazil, a price quote for the fuel bunkers. Communications between Petrobras and Ms. Shiozaki determined that Britannia did not have the requisite credit to purchase the fuel bunkers. Thus, the transaction was ultimately processed as a trade whereby OceanConnect.com of New York purchased the bunkers. Ms. Shiozaki received a fax confirmation from Petrobras indicating that OceanConnect

.com had purchased the bunkers to be supplied to the FESCO ANGARA. Ms. Shiozaki advised Ms. Gooby of the purchase and Ms. Gooby forwarded to Venkov a confirmation of the sale of the bunkers which included a choice of law provision in favor of the United States. The vessel did not object to the choice of law provision and accepted the fuel bunkers in Brazil.

Petrobras invoiced OceanConnect.com and OceanConnect.com paid the invoice. These cyberspace transactions make it difficult for the court to determine the exact location or place of the contract. However, we can say that the place of contract could potentially be in either England where Britannia's representative was located or in the United States where the person who ordered the fuel bunkers and initially sent the confirmation was located.

As to the inaccessibility of a foreign forum, OceanConnect would be at a disadvantage because it has already been determined that neither Danish nor English law recognize a maritime lien. Finally, the law of the forum is the United States and we have already found that this court has jurisdiction over this *en rem* proceeding because the vessel was arrested here in Lake Charles, Louisiana.

OceanConnect.com argues that the United States has an interest in this case because of its indispensable U.S. involvement. After considering the factors set forth in Lauritzen, the court finds that the United States has the most significant point of contacts and the law of the forum should be applied to the contract formation.

Having found that United States law applies to the contract formation, we now must determine whether the parties intended to incorporate the terms and conditions, which includes the provision that United States law would govern the contract. The vessel argues that the choice of law provision is invalid because it was not a party to the contract and Britannia lacked actual or apparent

8

authority to bind the vessel to a choice of law provision. We find that the contract between Britannia and OceanConnect.com is valid and enforceable. Britannia received the e-mail confirmation that included the choice of law provision and subsequently accepted the terms of the contract by accepting delivery of the fuel bunkers.

Next, applying the FMLA, we must determined whether OceanConnect is entitled to a maritime lien. For the same reasons set forth in our Memorandum Ruling issued on January 26, 2012,[23] we find that OceanConnect has established the elements of a maritime lien with respect to the fuel bunkers.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment (R. #45) will be granted in favor of OceanConnect.com, Inc. and OceanConnect UK Ltd. in the amount of $177,305.59 plus prejudgment interest on that sum. The cross motion for summary judgment (R. #83) will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 28th day of August, 2012.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[23] R. #67 and 68.